IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER PETROSKI | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 20-2112 |
| JOHN J. W. LEE, MD, FACS [1] | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                                  **JUNE 11, 2020**

Presently before the Court in this employment discrimination action is Defendant's Motion to Dismiss for Failure to State a Claim. (ECF No. 4.) Plaintiff Jennifer Petroski alleges that her supervisor frequently made offensive comments to her and other female employees regarding their appearances. Petroski routinely complained to her supervisor about these comments and alleges that she was demoted and then terminated as a result. For this Motion, we must decide whether Petroski has alleged plausible claims for sex discrimination and retaliation. We conclude that she has. The Motion will be denied.

**I.   BACKGROUND**

In 2014, Petroski began working as a patient coordinator for Defendant, the medical practice of Dr. John Lee. (Compl. ¶ 11, ECF No. 1.) Although Petroski does not allege the type of medical practice, an email exhibit attached to the Complaint suggests that the practice performs plastic surgery. (*See id*. Ex. 1.)

Christina Kim Lee was Dr. Lee's office manager and Petroski's direct supervisor. (*Id*. ¶

---

[1]   According to the Complaint, Defendant is a medical practice, and not an individual person.

12.)[2]  Ms. Lee regularly criticized Petroski and other female employees in the workplace for their physical appearances.  (*Id.* ¶ 13.)  For example, Ms. Lee told Petroski that her skin was too dark and "you look like a minority, Jen, this isn't the look we want for our patients."  (*Id.* ¶ 14.)  Ms. Lee also told Petroski on a weekly basis that her lips looked "Amazon."  (*Id.*)

Ms. Lee told at least eight other female employees that they looked "frumpy."  (*Id.* ¶ 16.)  She also told at least three female employees not to wear glasses because it made them look old.  (*Id.* ¶ 15.)  On one occasion, Ms. Lee told Dr. Lee that he should perform surgery on a new female employee before her start date because she was "too ugly."  (*Id.* ¶ 17.)

Every time Petroski heard Ms. Lee criticize her or another female employee, Petroski complained to her.  (*Id.* ¶ 18.)  By 2016, the work environment began taking an emotional toll on Petroski.  (*Id.* ¶ 20.)  Concerned, Petroski's husband wrote Ms. Lee an email on October 4, 2016.  In the email, Petroski's husband expressed his concerns with various workplace issues at Dr. Lee's office, including Ms. Lee's comments about Petroski's appearance.  (*Id.* ¶ 20 & Ex. 1.)  On October 10, 2016, Ms. Lee responded to the email.  In her lengthy response were several notable statements, including:

- "Yes, I have been resentful toward [Petroski] lately and have been trying to work it out."

- "Understand there is a lot of jealousy over Jen in this practice.  It's been an ongoing issue.  She has [hours] that other people don't have b/c of her commute, she is beautiful, my staff knows I favor her, our patients adore her, we schedule our [patients] around her vacation/time off, and a lot of my staff wants to do what she does."

- "[A] lot of people say things about Jen – I don't repeat them to her [because] I don't know if it's real and it would also hurt and affect her.  I know it's mostly out of jealousy and also [because] they know her appearance is a sore subject that I have talked to Jen repeatedly about.  I think she is gorgeous!  All our patients think she is beautiful – it's just that we have a super conservative and old clientele that want everything to look natural like they had nothing done – that is NOT Jen's aesthetic.  I have to care about my

---

[2]     In its Motion, Defendant acknowledges that Ms. Lee is Dr. Lee's wife.

- patients' comments.  I would not be a good manager if I didn't.  If my patients or staff is saying that she doesn't look natural, then it's a huge issue for me.  It's something I have heard ongoing from patients but try to not bring up a lot [because] I know Jen doesn't want to hear it and doesn't agree.  However, when I was upset about the whole resignation incident, it brought back all the times I asked her to dress conservatively, not to tan and come in the office 'orange', etc."

- "Women are difficult to work with.  I can express my feelings and frustrations and not worry that it will be exaggerated and twisted and turned into gossip when working with me[n] – which I did all my career until this practice.  When I worked w/ men, I didn't have to worry about how I said what I said – we talk about each other and our issues and that's it, we go on with our lives.  It's not like that with women."

(*Id*. ¶ 21 & Ex. 1.)

In mid-November 2016, Petroski was sick and called out of work for a week.  (*Id*. ¶ 24.) When she returned, Ms. Lee demoted her to a filing position and changed her hours.  (*Id*. ¶ 25.) On December 14, 2016, Petroski was fired.  (*Id*. ¶. 26.)  During the meeting at which Petroski was terminated, Ms. Lee said that she did not believe Petroski was actually sick when she called out in November, stating, "well you looked fine walking around in your high heels."  (*Id*. ¶ 27.) Ms. Lee also commented that Petroski walked around the office like she was in a "wet t-shirt contest."  (*Id*.)

Ms. Lee admitted to Petroski that she had changed Petroski's hours and position to get Petroski to quit.  (*Id*. ¶ 28.)  After Petroski's termination, Dr. Lee's office made disparaging remarks about her to potential and prospective employers, thus impeding Petroski's attempt to find new employment.  (*Id*. ¶ 30.)

On May 1, 2020, Petroski filed a two-count Complaint in this diversity action[3] against Dr. Lee's practice, alleging:  (1) sex discrimination, in violation of the Pennsylvania Human

---

[3]   According to the Complaint, Petroski is a New Jersey resident and Defendant is a Pennsylvania business entity.  (Compl. ¶¶ 1-3.)

3

Relations Act ("PHRA"), 43 Pa. Stat. §§ 951-63; and (2) retaliation, also in violation of the PHRA.  On May 22, 2020, Defendant moved to dismiss the Complaint under Rule 12(b)(6), for failure to state a claim.  (ECF No. 4.)

## II.     DISCUSSION

### A.     Standard of review

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

**B.     Petroski states a claim for sex discrimination [4] [5]**

The PHRA prohibits employers from discriminating against employees "because of" their sex.  43 Pa. Stat. § 955(a).  To overcome a motion to dismiss a sex discrimination claim, the plaintiff must allege "sufficient factual matter that permits the reasonable inference that [she] was terminated or retaliated against because of her … sex."  *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 (3d Cir. 2010) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000)).

Comments about a woman's appearance may constitute evidence of discrimination where the comments "by their nature *apply only to women*."  *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-41 (8th Cir. 2010) (emphasis added) (collecting cases).  Although we are aware of no Third Circuit case law directly on point, the Third Circuit "does recognize gender stereotyping claims as a form of discrimination because of sex."  *Guess v. Philadelphia Hous. Auth.*, 354 F. Supp. 3d 596, 602 (E.D. Pa. 2019) (citing *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 262-63 (3d Cir. 2001); *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 290 (3d Cir. 2009)).

---

[4]     Although Petroski's claims invoke the PHRA, we rely primarily on Title VII case law. *See Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009) (recognizing that the analysis of a plaintiff's claims under Title VII and the PHRA "is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably" (internal quotation and citation omitted)).

[5]     In her response to the Motion to Dismiss, Petroski asserts that she has also pleaded a hostile work environment claim.  However, she does not allege a hostile work environment in her Complaint.  She alleges only sex discrimination and retaliation in her two-count Complaint.  Accordingly, we consider only whether Petroski has adequately pleaded those two claims.  If Petroski wishes to pursue a hostile work environment claim, she will have to seek leave to amend her Complaint.

The nature and frequency of all of Ms. Lee's comments, including her comments about being "frumpy," high heels, and the wet t-shirt contest, show that Ms. Lee was obsessed with her female employees' appearances and that she singled out Petroski. It is plausible that Ms. Lee bore animus towards Petroski because of Petroski's physical appearance—much of which was unique to her as a woman—and Petroski's failure to conform to Ms. Lee's ideation of femininity. For purposes of a motion to dismiss, Petroski has sufficiently alleged sexually discriminatory conduct. *See Smith v. City of Salem*, 378 F.3d 566, 574 (6th Cir. 2004) (recognizing that "an employer who discriminates against women because … they do not wear dresses or makeup, is engaging in sex discrimination because the discrimination would not occur but for the victim's sex"); *Doe v. Belleville*, 119 F.3d 563, 580-81 (7th Cir. 1997) (holding that "Title VII does not permit an employee to be treated adversely because his or her appearance or conduct does not conform to stereotypical gender roles" and explaining that "a man who is harassed because his voice is soft, his physique is slight, his hair long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed 'because of his sex'"), *vacated and remanded on other grounds*, 523 U.S. 1001 (1998).

The question becomes whether Petroski suffered an adverse employment action as a result of discrimination. We conclude that Petroski's allegations as to causation are plausible. For example, while the ostensible reason for Petroski's termination was that she had lied about being sick in November 2016, Ms. Lee could not help but bring up Petroski's physical appearance at the termination meeting. For purposes of this Motion, Ms. Lee's comments support an inference that Petroski was terminated as a result of Ms. Lee's discriminatory animus towards her, particularly as it related to Petroski's physical appearance. *Cf. Golod*, 403 F. App'x

at 702 n.2 (noting that an inference of discrimination can be supported for purposes of a 12(b)(6) motion by "statements or actions by [the plaintiff's] supervisors suggesting [impermissible] animus").

### C. Petroski states a claim for retaliation

The PHRA contains an anti-retaliation provision. 43 Pa. Stat. § 955(d). To state a claim for retaliation, "the employee must allege (1) a protected employee activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and the adverse action." *MacVaugh v. Cnty. Of Montgomery*, 301 F. Supp. 3d 458, 465 (E.D. Pa. 2018) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Petroski has sufficiently alleged these elements.

As to the first element, Petroski engaged in protected activity every time she complained to Ms. Lee about what she perceived as derogatory comments regarding her and her coworkers' appearances. *See Jajua v. Diakon Lutheran Social Ministries*, 299 F. Supp. 3d 645, 565 (E.D. Pa. 2018) (holding that protected activity includes "'informal protests of discriminatory employment practices, including making complaints to management'" (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington*, 450 F.3d 130, 135 (3d Cir. 2006))); *Norfolk v. GEO Grp., Inc.*, No. 17-204, 2020 WL 1873991, at *11 (W.D. Pa. Apr. 15, 2020) (finding that a correctional officer engaged in protected activity when he reported his supervisor's racially charged comments to human resources and the assistant warden).

With regard to the second element, "[a]n 'adverse employment action' in this context is an action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Doe v. Apria Healthcare Grp. Inc.*, 97 F. Supp. 3d 638, 647 (E.D. Pa. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). It is

"not limited to employer action that affects the terms and conditions of a claimant's employment," as "'[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace.'" *Komis v. Sec'y f United States Dep't of Labor*, 918 F.3d 289, 293 (3d Cir. 2019) (emphasis in original) (quoting *Burlington N.*, 548 U.S. at 63).

Petroski alleges that she was demoted and ultimately terminated. She also alleges that Dr. Lee's office made disparaging remarks about her to potential employers when she was looking for a new job following her termination. All of these actions would dissuade a reasonable employee from engaging in protected activity.

A plaintiff may establish the final element, causation, by proffering evidence of a close temporal proximity between the protected activity and retaliatory conduct, a pattern of antagonism following the protected conduct, or any other evidence from which one may infer that the protected activity was likely the reason for the retaliatory conduct. *See Bailey v. Commerce Nat'l Ins. Servs., Inc.*, 267 F. App'x 167, 170 (3d Cir. 2008) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

Drawing all reasonable inferences from the Complaint in Petroski's favor, it appears that Ms. Lee's offensive comments to Petroski—and Petroski's complaints about those comments—were frequent throughout 2016. Moreover, based on Ms. Lee's October 10, 2016 email, it appears that by that time, Ms. Lee had grown frustrated with Petroski's objections to her comments. (*See* Compl. Ex. 1 ("If my patients or staff is saying that she doesn't look natural, then it's a huge issue for me. It's something I have heard ongoing from patients but try to not bring up a lot b/c I know Jen doesn't want to hear it and doesn't agree.").) One month later, after Petroski returned from her sick leave in November 2016, Ms. Lee demoted Petroski. A month

after that, Petroski was terminated. Based on these allegations, it is plausible that Petroski could establish causation on the basis of temporal proximity or a pattern of antagonism.

Finally, we note that for purposes of this Motion, we need not and do not take a position on whether Petroski's husband's email constitutes protected activity. Several courts have held that protected activity includes protests made by a third party on the employee's behalf. *See E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 545-46 (6th Cir. 1993); *see also O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (concluding that "whether [plaintiff] or his attorney wrote the letter is wholly irrelevant" when "[t]he letter was an informal complaint which disclosed [plaintiff's] dissatisfaction with his new position"); *Hale v. Emporia State Univ.*, 265 F. Supp. 3d 1236, 1243 (D. Kan. 2017) (considering complaints made by employee's husband protected activity where "husband was complaining for her"). As the Sixth Circuit has recognized, any other interpretation of the law "would allow an employer to retaliate with impunity if someone engaged a representative to act on his behalf and would frustrate the [law's] purpose to prevent retaliation for opposing unlawful employment practices." *Ohio Edison*, 7 F.3d at 545.

This reasoning may not apply here since Petroski did not engage her husband to act on her behalf in this respect. Rather, according to the husband's email to Ms. Lee, he took it upon himself to contact Ms. Lee, without Petroski's knowledge. (*See* Compl. Ex. 1 ("Christina, I just wanted to send an email and please know *Jen has no knowledge of this* and I would like to keep this private between us." (emphasis added)). Should Petroski proceed on the theory that her husband's email constituted protected activity, she will have to address this issue.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion will be denied.

An appropriate order follows.

**BY THE COURT:**


**/s/ R. Barclay Surrick**
**R. BARCLAY SURRICK, J.**
